UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER L. SCRUGGS,

Plaintiff,

v.

SHERRI WASHINGTON, *et al.*,

Defendants.

No. 3:24 CV 138

OPINION and ORDER

Christopher L. Scruggs, a prisoner without a lawyer, proceeds in this case on the following claims: (1) an Eighth Amendment claim against Lieutenant Washington for tasing him twice on December 23, 2023; (2) an Eighth Amendment claim against Sergeant Hernandez, Sergeant Killingsworth, Officer Baity, and Officer Barber for failing to intervene when Lieutenant Washington tased him; and (3) a First Amendment claim against Sergeant Killingsworth for issuing a conduct report in retaliation for Scruggs' complaints about his legal mail. (DE # 4.) The defendants filed the pending motion for summary judgment, arguing that Scruggs did not exhaust administrative remedies with respect to any of his claims. (DE # 66.)

The parties filed motions for leave to file a supplemental round of briefing, which the court grants. (DE ## 75, 77, 78.) The court also grants the defendants' motion to amend the affidavits in support of the summary judgment motion for the purpose of correcting a

clerical error and denies as moot Scruggs' motions to strike the affidavits based on that clerical error. (DE ## 73, 76, 78.)[1]

## I.    BACKGROUND

In the complaint, Scruggs alleges that, on December 23, 2023, he became fatigued after cleaning his cell, and he slipped and fell on the floor. (DE # 2 at 3-6.) He hurt his lower back and could not stand. (*Id.*) He asked a correctional officer and a nurse for assistance, but they accused him of faking an injury and walked off. (*Id.*) That night, Sergeant Hernandez, Lieutenant Washington, and a nurse arrived at his cell as he remained immobile on the floor. (*Id.*) The nurse told the correctional officers that Scruggs was faking an injury. (*Id.*) At some point, Sergeant Killingsworth, Officer Baity, and Officer Barber also arrived at the cell. (*Id.*) Scruggs said that he could not get up due to his back, and Lieutenant Washington told him to get up or she would tase him. (*Id.*) Lieutenant Washington tased him and threatened to tase him again if he did not get up, and Scruggs again responded that he could not get up due to his back. (*Id.*) Lieutenant Washington then tased him again. (*Id.*)

According to Scruggs, Sergeant Killingsworth retaliated against Scruggs by issuing a conduct report against him in connection with the tasing incident because Scruggs had asked Sergeant Killingsworth to follow legal mail policy. (*Id.* at 6-9.) Specifically, Scruggs told Sergeant Killingsworth to count the pages of his copied legal documents, laughed at

---

[1] Though unrelated to the motion for summary judgment, the court further grants Scruggs' motion to amend his scheduling report. (DE # 63.)

Sergeant Killingsworth, and told Sergeant Killingsworth to shred the original versions in his presence. (*Id.*)

In an affidavit, Shannon Smith, grievance specialist at the Westville Correctional Facility, attests that a grievance process is available to inmates. (DE # 78-1 at 1-3.) The policy sets forth a three-step grievance process. (DE # 69-2 at 9-14.) First, an inmate must file a formal grievance with the grievance specialist. (*Id.*) Inmates must submit formal grievances within ten business days of the incident at issue. (*Id.*) If an inmate is dissatisfied with the grievance specialist's determination on a formal grievance, he may file an appeal with the warden or his designee. (*Id.*) Finally, if an inmate is dissatisfied with the warden's determination, he may file an appeal with the department grievance manager. (*Id.*) The grievance policy also requires that grievances "explain how the situation or incident affects the offender" and that the inmate "suggest appropriate relief or remedy." (*Id.*) According to the grievance specialist, the departmental records contain no grievances related to Scruggs' claims but reflect that Scruggs submitted an unrelated grievance on December 22, 2023. (*Id.* at 3-5.)

On December 23, 2023, Sergeant Killingsworth authored a conduct report charging Scruggs with the offense of physically resisting officers. (DE # 74-2.) According to the conduct report, Sergeant Killingsworth, Sergeant Hernandez, Officer Baity, and Officer Barber were all present when Sergeant Washington tased Scruggs. (*Id.*) On February 6, 2024, Scruggs received notice of the conduct report. (*Id.*)

On January 2, 2024, Scruggs submitted a grievance regarding the use of force incident. (DE # 71-2 at 1-2.) He wrote that an unidentified sergeant entered his cell with

3

Lieutenant Washington. (*Id.*) He also wrote that "staff" came into his cell to cuff him and that Lieutenant Washington tased him twice. (*Id.*) He wrote that, before Lieutenant Washington tased him, he said that he could not move due to back pain but "no staff (IDOC nor Medical) paid attention to what I said." (*Id.*) He wrote, "only after [the tasing] did staff pick [him] up and [drag him] to the bunk." (*Id.*) For relief, he asked not to be tased when suffering back issues. (*Id.*) On February 7, 2024, Scruggs submitted a grievance asserting that Sergeant Killingsworth had fabricated the conduct report in retaliation for his insistence that Sergeant Killingsworth count the copied pages of his legal records. (*Id.* at 3.) For relief, he sought an end to the retaliation. (*Id.*)

## II.    LEGAL STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

## III.    DISCUSSION

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the

administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The purpose of a grievance is to alert officials to a problem so that action can be taken to remedy the problem. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Proper exhaustion of administrative remedies means that "the grievances must contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). "[I]n line with the purpose of the PLRA—to give a prison an opportunity to correct a problem before litigation, prisoners must provide some identifying information about the accused individuals," *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024). "In other words, a grievance must contain enough information about who caused the grieved of problem so that a prison can properly investigate and resolve grievances." *Id.* "Indeed, [the Seventh Circuit has] found exhaustion as to defendants not named in a grievance when, from the content of the grievance and the nature of the complained of conduct the prison was clearly on notice that those unnamed defendants were involved." *Id.*

In the memorandum in support of the motion for summary judgment, the defendants argued for summary judgment on all claims based on the lack of any relevant grievances in the departmental records. In response, Scruggs filed handwritten copies of the relevant grievances and attesting that he timely submitted the original versions. In reply, the defendants expressed skepticism regarding the handwritten copies but

conceded that such credibility disputes were more appropriately resolved at an evidentiary hearing.

Consequently, the salient issue for resolving this summary judgment motion is whether the grievance submitted on January 3, 2024, included sufficient information to satisfy the exhaustion requirement with respect to the claim that Sergeant Hernandez, Sergeant Killingsworth, Officer Baity, and Officer Barber failed to intervene when Lieutenant Washington tased him on December 23, 2023. The defendants argue that the conduct report does not reference Sergeant Hernandez, Sergeant Killingsworth, Officer Baity, or Officer Barber. However, the grievance appears to refer to Sergeant Hernandez, if only by title, and appears to reference Sergeant Killingsworth, Officer Baity, or Officer Barber as the "staff" who came into his cell to handcuff him. Further, in the grievance, Scruggs asked not to be tased when suffering back issues, a remedy which could be implemented by both instructing officers to not use force on inmates with back pain and by instructing officers to intervene if other officers are using force on inmates with back pain. And, crediting Scruggs' attestation that he submitted this grievance on the proper form as the court must at the summary judgment stage, it appears that the grievance fully complied with the departmental grievance policy. (DE # 68-2; DE # 71-2 at 5.)

The court further finds that Scruggs' grievance fulfilled the essential purpose of a grievance. The grievance expressly alerted prison staff to Lieutenant Washington's use of force on December 23, 2023. The grievance also explained that a sergeant arrived at his cell with Lieutenant Washington and that other correctional staff came in before Lieutenant Washington tased him. Though the grievance does not identify Sergeant Hernandez,

6

Sergeant Killingsworth, Officer Baity, or Officer Barber by name, it seems likely that a grievance officer investigating the grievance could have discovered their identities and may have included them in the investigation. This seems particularly true here given that a conduct report identifying these defendants was issued on December 23, 2023. Additionally, interviewing these defendants likely would have revealed whether intervening with the lieutenant's use of force was warranted and the degree to which such intervention was possible. And Scruggs arguably accused these defendants of wrongdoing when he said that "no staff (IDOC or Medical) paid attention" to his explanation for refusing to stand up and that "only after [the tasing] did staff pick [him] up." As a result, the court finds that the information provided in the grievance was adequate to enable an investigation of Sergeant Hernandez, Sergeant Killingsworth, Officer Baity, or Officer Barber because it suggested that they were involved in the use of force incident and that their inclusion in such an investigation might be appropriate.

Consequently, the court finds that Scruggs' grievances included sufficient information to satisfy the exhaustion requirement with respect to the Eighth Amendment claim that Sergeant Hernandez, Sergeant Killingsworth, Officer Baity, and Officer Barber failed to intervene when Lieutenant Washington tased him on December 23, 2023. Therefore, the court denies the motion for summary judgment with respect to the argument that Scruggs did not include sufficient information in the grievance to exhaust this claim.

Nevertheless, there remains a material factual dispute as to whether Scruggs submitted the two grievances as he has attested. Though Scruggs asserts that an

evidentiary hearing would be a "waste of time," the court finds that the lack of relevant grievances in the departmental records is sufficient to create a material fact as to whether Scruggs properly submitted these grievances. *See* Fed. R. Evid. R. 803(7) (absence of record of a regularly conducted activity). Because the defendants have requested an evidentiary hearing in their reply brief on this factual issue, the court will immediately refer this case to the magistrate judge for an evidentiary hearing.

## IV.    CONCLUSION

For these reasons, the court:

(1) **GRANTS** the motion to amend the status report (DE # 63);

(2) **DENIES as MOOT** the motions to strike (DE ## 73, 76);

(3) **GRANTS** the motions for leave to file supplemental briefing (DE ## 75, 77, 78);

(4) **DENIES** the motion for summary judgment (DE # 66);

(5) **GRANTS** the request for an evidentiary hearing (DE # 74); and

(6) **REFERS** this case to Magistrate Judge John E. Martin to conduct an evidentiary hearing and prepare a report and recommendation as provided for by *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to determine whether Christopher L. Scruggs properly submitted grievances relating to his claims.

**SO ORDERED.**

Date: March 10, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT